## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM RODRIGUEZ,                  :

        Plaintiff                  :          No. 4:10-CV-02089

        v.                  :          (Judge Nealon)

                             :

MICHAEL J. ASTRUE,                  :
COMMISSIONER OF SOCIAL                  :
SECURITY,                  :

        Defendant                  :



### MEMORANDUM AND ORDER

### BACKGROUND

       The above-captioned action is one seeking review of a decision of the Commissioner of

Social Security ("Commissioner") denying Plaintiff William Rodriguez's claim for social security

disability insurance benefits and supplemental security income benefits. For the reasons set forth

below we will remand the case to the Commissioner for further proceedings.

       Disability insurance benefits are paid to an individual if that individual is disabled and

"insured," that is, the individual has worked long enough and paid social security taxes. The last

date that a claimant meets the requirements of being insured is commonly referred to as the "date

last insured." It is undisputed that Rodriguez met the insured status requirements of the Social

Security Act through June 30, 2009. Tr. 9, 11, 115 and 125.[1] In order to establish entitlement to

disability insurance benefits, Rodriguez was required to establish that he suffered from a disability

on or before that date. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a)(2008); see

Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

       Supplemental security income (SSI) is a federal income supplement program funded by

general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled

---

1.    References to "Tr._" are to pages of the administrative record filed by the Defendant as
part of his Answer on December 17, 2010.

individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.

Rodriguez was born in the United States on April 24, 1961. Tr. 95. Rodriguez has a limited education. Tr. 85. He withdrew from school after completing the 8th grade. Tr. 30. At the administrative hearing held in this case on November 6, 2009, Rodriguez testified that he has difficulty reading and writing the English language. Id. In September, 2009, Rodriguez's reading and math abilities were tested by the Bradford-Wyoming County Literacy Program. Tr. 450-451. The tests revealed that Rodriguez was reading at the 3.8 grade level and his math abilities were at the 3.5 grade level. Id.

Rodriguez has past relevant[2] unskilled, light to medium work experience as a laborer; semi-skilled, light work as a machine operator; semi-skilled, medium work as a press operator; unskilled, medium work as a sanitation person at a meat packing plant; and unskilled, medium work as a stock person at a grocery store.[3] Tr. 40 and 137. Rodriguez claims that he is unable to

---

2.    Past relevant employment in the present case means work performed by Rodriguez during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

3.    The terms sedentary, light and medium work are defined in the Social Security regulations as follows:

> (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the

(continued...)

work because of mental impairments, including bipolar disorder, depression, anxiety, posttraumatic stress disorder and a learning disorder. Tr. 69, 79, 129 and 294.

On September 17, 2007, Rodriguez protectively filed[4] an application for disability insurance benefits and an application for supplemental security income benefits. Tr. 9, 62-63, 95-107, 110 and 125. On June 4, 2008, the Bureau of Disability Determination[5] denied Rodriguez's applications. Tr. 69-78. On July 24, 2008, Rodriguez requested a hearing before an administrative law judge. Tr. 79-81. On November 6, 2009, a hearing was held before an administrative law judge. Tr. 24-43. On January 4, 2010, the administrative law judge issued a decision denying Rodriguez's applications for benefits. Tr. 9-17. On March 5, 2010, Rodriguez filed a request for review of the decision with the Appeals Council of the Social Security Administration. Tr.

---

3.   (...continued)
          ability to do substantially all of these activities.
          If someone can do light work, we determine that he or
          she can also do sedentary work, unless there are
          additional limiting factors such as loss of fine
          dexterity or inability to sit for long periods of time.

          (c) *Medium work*. Medium work involves lifting no more
          than 50 pounds at a time with frequent lifting or
          carrying of objects weighing up to 25 pounds. If
          someone can do medium work, we determine that he or she
          can do sedentary and light work.

20 C.F.R. §§ 404.1567 and 416.967.

4.   Protective filing is a term for the first time an individual contacts the Social Security
Administration to file a claim for benefits. A protective filing date allows an individual to have
an earlier application date than the date the application is actually signed.

5.   The Bureau of Disability Determination is an agency of the Commonwealth of
Pennsylvania which initially evaluates applications for disability insurance benefits and
supplemental security income benefits on behalf of the Social Security Administration. Tr. 70
and 75.

93-94.  On August 9, 2010, the Appeals Council concluded that there was no basis upon which to grant Rodriguez's request for review. Tr. 1-5.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On October 8, 2010, Rodriguez filed a complaint in this court requesting that we reverse the decision of the Commissioner denying him disability insurance benefits and supplemental security income benefits.  The Commissioner filed an answer to the complaint and a copy of the administrative record on December 17, 2010.  Rodriguez filed his brief on March 14, 2011 and the Commissioner filed his brief on April 18, 2011.  The appeal[6] became ripe for disposition on May 5, 2011, when Rodriguez elected not to file a reply brief.

**Standard of Review**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner.  See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence.");

---

6.    Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

4

Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001);  Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008);  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213.  In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which
> he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for
> work. For purposes of the preceding sentence (with
> respect to any individual), "work which exists in the
> national economy" means work which exists in significant
> numbers either in the region where such individual
> lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[7] (2) has an impairment that is severe or a combination of impairments that is severe,[8] (3) has an impairment or combination of impairments

---

7. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510 and 20 C.F.R. § 416.910.

8. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-

(continued...)

6

that meets or equals the requirements of a listed impairment,[9] (4) has the residual functional

capacity to return to his or her past work and (5) if not, whether he or she can perform other work

in the national economy. Id. As part of step four the administrative law judge must determine the

claimant's residual functional capacity. Id.[10]

Residual functional capacity is the individual's maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis. See Social Security

Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates

full-time employment and is defined as eight hours a day, five days per week or other similar

schedule. The residual functional capacity assessment must include a discussion of the individual's

abilities. Id; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual

functional capacity' is defined as that which an individual is still able to do despite the limitations

caused by his or her impairment(s).").

---

8.   (...continued)
(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered
in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523,
404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's
physical or mental abilities when its effect on the claimant to perform basic work activities is
more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift,
carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 404.1545(b). An individual's
basic mental or non-exertional abilities include the ability to understand, carry out and remember
simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20
C.F.R. § 1545(c).


9.   If the claimant has an impairment or combination of impairments that meets or equals a
listed impairment, the claimant is disabled. If the claimant does not have an impairment or
combination of impairments that meets or equals a listed impairment, the sequential evaluation
process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments
"describes for each of the major body systems impairments that [are] consider[ed] to be severe
enough to prevent an individual from doing any gainful activity, regardless of his or her age,
education, or work experience." Section 404.1525 also explains that if an impairment does not
meet or medically equal the criteria of a listing an applicant for benefits may still be found
disabled at a later step in the sequential evaluation process.

10.   If the claimant has the residual functional capacity to do his or her past relevant work, the
claimant is not disabled.

## MEDICAL RECORDS

Before we address the administrative law judge's decision and the errors committed by him, we will briefly review the relevant medical records which reveal that Rodriguez received treatment for mental and physical problems.

In March, 2008, Lynnette G. Ruch, Ph.D., a licensed psychologist, evaluated Rodriguez on behalf of the Bureau of Disability Determination. Tr. 289-294. Dr. Ruch concluded that Rodriguez suffered from dysthymic disorder,[11] posttraumatic stress disorder, intermittent explosive disorder, a learning disability, and "alcohol abuse in full stable remission." Tr. 294. Dr. Ruch could not rule out the possibility that Rodriguez suffered from mild mental retardation. Id. Dr. Ruch gave Rodriguez a Global Assessment of Functioning (GAF) score of 40[12] and further stated as follows: "William Rodriguez's prognosis is poor. He appears to have fairly severe intellectual limitations. In addition, he has mental health issues with depression and posttraumatic stress. He also has a temper." Id.

---

11. Dysthymia is "a mood disorder characterized by depressed feeling (sad, blue, low, down in the dumps) and loss of interest or pleasure in one's usual activities and in which the associated symptoms have persisted for more than two years but are not severe enough to meet the criteria for major depression." Dorland's Illustrated Medical Dictionary, 521 (27th Ed. 1988).

12. The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. A GAF score of 11-20 represents some danger of hurting self or others. A GAF score of 21-30 represents behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. A GAF score of 61 to 70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. Id.

8

On April 23, 2008, John W. Kelsey, Ph.D., a licensed psychologist, conducted a "limited cognitive evaluation"[13] of Rodriguez on behalf of the Bureau of Disability Determination. Tr. 296-300. Dr. Kelsey found that Rodriguez was functioning within the borderline intellectual range. Tr. 299. Rodriguez had a Full Scale IQ of 70, a Verbal IQ of 71 and a Performance IQ of 74. Tr. 296. Dr. Kelsey concluded that Rodriguez only had moderate limitations in his ability to carry-out detailed instructions and make judgments on simple work-related decisions; slight limitations in carrying-out short, simple instructions, and in understanding and remembering detailed instructions; and no limitations in understanding and remembering short, simple instructions. Tr. 295. Dr. Kelsey found that Rodriguez was not limited in responding appropriately to supervision and co-workers and only slightly limited in responding appropriately to work pressures and work setting changes. Id. Dr. Kelsey also stated that Rodriguez had "no other mental health issues except intellectual ability." Id.

On May 13, 2008, Dennis C. Gold, Ph.D., a non-treating, non-examining psychologist, conducted a records review and opined that Rodriguez "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." Tr. 317. In contrast to Dr. Kelsey who stated that Rodriguez had "no other mental health issues except intellectual ability." Dr. Gold concluded that Rodriguez suffered from dysthymic disorder and posttraumatic stress disorder. Id.

In June, 2008, Rodriguez sustained a burn injury to 15% of his total body surface area when a gas grill exploded. Tr. 379. It appears that prior to sustaining the burn injury, Rodriguez was using marijuana and opiates. Tr. 349. A urine drug screen on June 26, 2008, was positive for morphine and THC metabolite. Id. Rodriguez sustained second to third-degree burns to his face, chest, neck and right upper extremity and an inhalation injury. Tr. 379. Rodriguez was treated for his physical injuries at the Lehigh Valley Hospital, Allentown, Pennsylvania, from June 26 to July 3, 2008. Tr. 331-347 and 370-378. On July 3, 2008, Rodriguez was transferred and voluntarily admitted to the

13.    Dr. Kelsey described his evaluation as a limited one. Tr. 299.

Behavioral Center at Lehigh Valley Hospital - Muhlenberg, Bethlehem, Pennsylvania. Tr. 383 and 389. At the time of Rodriguez's admission to the Behavioral Center, his diagnosis was bipolar disorder and THC abuse. Tr. 392. The admitting physician gave Rodriguez a GAF score of 20. Id. Rodriguez was treated with Abilify[14] and discharged from the Behavioral Center on July 9, 2008, with a diagnosis of bipolar disorder and a GAF score of 60. Tr. 383. He was also instructed to follow-up with Northern Tier Counseling, Towanda, Pennsylvania, on July 10, 2008. Tr. 385.

On July 15, 2008, Rodriguez had an initial appointment with Lucille Venturanza, M.D., a psychiatrist, at Northern Tier Counseling.[15] Tr. 486. Dr. Venturanza concluded that Rodriguez suffered from bipolar disorder, severe with psychotic features (DSM Code 296.54) and gave Rodriguez a GAF score of 45. Id. Rodriguez was scheduled for therapy at Northern Tier Counseling three times per week. Id. The administrative record reveals that Rodriguez received treatment at Northern Tier Counseling through at least the time of the administrative hearing. Tr. 31. His

---

14. "Abilify (aripiprazole) is an antipsychotic medication . . . used to treat the symptoms of psychotic conditions such as schizophrenia and bipolar disorder (manic depression). It is also used together with other medications to treat major depressive disorder in adults." Abilify, Drugs.com, http://www.drugs.com/abilify.html (Last accessed November 29, 2011).

15. The signature of Dr. Venturanza is barely legible. A review of all the records from Northern Tier Counseling reveals that there are two psychiatrists associated with that organization: Michael Lavin, M.D., and Lucille Venturanza, M.D. All of the psychiatric clinic visit forms were signed by a psychiatrist. The signature appears to be that of Dr. Venturanza.

treatment consisted of group and individual therapy and medications, including Depakote,[16] Zyprexa[17] and Seroquel.[18] Tr. 31, 426-425 and 434.

Rodriguez had appointments and was evaluated at Northern Tier Counseling on at least 15 occasions between July 15, 2008, and August 11, 2009. Tr. 418-419, 422, 424, 426-427, 429-430, 432-434, 446, 457 and 486. During this time Rodriguez was diagnosed with bipolar disorder, severe with psychotic features, and a mood disorder, not otherwise specified. Id. He was also consistently assessed with GAF scores from 44 to 46, representing serious symptoms or severe impairment. Specifically, the GAF scores were as follows:

| | | |
|---|---|---|
| 7/15/08 | 45 | Tr. 486 |
| 9/3/08 | 45 | Tr. 446 |
| 9/9/08 | 45 | Tr. 433-434 |
| 9/24/08 | 45 | Tr. 432 |
| 10/20/08 | 46 | Tr. 430 |
| 11/17/08 | 44 | Tr. 429 |
| 12/17/08 | 46 | Tr. 427 |
| 12/22/08 | 46 | Tr. 426 |

---

16.   The drug Depakote (divalproex sodium) is used to treat "mania or mixed episodes associated with bipolar disorder (manic depressive disorder)[.]" Valproic acid, PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000677/ (Last accessed November 29, 2011).

17.   "Zyprexa (olanzapine) is an atypical antipsychotic medication. Exaxtly how it works is not known. It is thought to work by changing the actions of certain chemical in the brain. Zyprexa is used to treat the symptoms of psychotic conditions such as schizophrenia and bipolar disorder (manic depression) in adults[.]" Zyprexa, Drugs.com, http://www.drugs.com/zyprexa.html (Last accessed November 29, 2011).

18.   "Seroquel (quetiapine) is an antipsychotic medicine. . . . used together with antidepressant medications to treat major depressive disorder in adults." Seroquel, Drugs.com, http://www.drugs.com/seroquel.html (Last accessed November 29, 2011).

| | | |
|---|---|---|
| 1/12/09 | 46 | Tr. 424 |
| 1/26/09 | 46 | Tr. 422 |
| 3/13/09 | 46 | Tr. 420 |
| 4/22/09 | 46 | Tr. 419 |
| 6/8/09 | 46 | Tr. 418 |
| 7/10/09 | 46 | Tr. 458 |
| 8/11/09 | 46 | Tr. 457 |

Also, as stated previously Rodriguez was given a GAF score of 40 on March 6, 2008, by Dr. Ruch. Tr. 294.

On August 31, 2007, John H. Weis, D.O., Rodriguez's primary care physician, completed a form entitled "Pennsylvania Department of Public Welfare Employability Re-Assessment Form" in which he stated that Rodriguez was permanently disabled because of illiteracy, a learning disorder, and chest pain. Tr. 123-124. Dr. Weis further stated that his opinion was based on physical examinations, clinical history and appropriate tests and diagnostic procedures. Id. Our review of the administrative record did not reveal any medical records from Dr. Weis prior to the date he completed that form. Tr. 442-444. Furthermore, our review only revealed two treatment records from Dr. Weis dated March 30 and July 30, 2009. The appointment on March 30th appears to have been a follow-up appointment with Dr. Weis regarding Rodriguez's burn injury. Tr. 442-443. In the treatment record of July 30th Dr. Weis noted that Rodriguez was suffering from depression and receiving medical care at Northern Tier Counseling. Tr. 447-448.

**Discussion**

The administrative law judge went through each step of the sequential evaluation process and (1) found that Rodriguez had not engaged in substantial gainful activity since September 1, 2007, the

12

alleged onset date; (2) found that Rodriguez had the following severe impairments: depression, anxiety and a learning disorder; (3) found that Rodriguez had no physical impairments; (4) found that Rodriguez's impairments did not meet or equal a listed impairment; (5) found that Rodriguez lacked credibility; (6) rejected the opinion of Dr. Weis, Rodriguez's primary care physician; (7) failed to mention or discuss Dr. Ruch's evaluation of Rodriguez; (8) failed to discuss or mention the 16 GAF scores ranging from 40 to 46; (9) relied on the opinions of Dr. Kelsey and Dr. Gold and the one GAF score of 60; and (10) concluded that Rodriguez could perform a full range of work at all exertional levels but with certain non-exertional limitations. Tr. 12-16.  Specifically, the administrative law judge stated that Rodriguez could engage in full-time work "limited to jobs that involve simple, repetitive tasks; only simple judgment and decision making; no contact with the general public and only occasional contact with supervisors and coworkers; and not requiring good reading skills." Tr. 13.

At the administrative hearing, the administrative law judge asked the vocational expert to consider an individual with the above residual functional capacity and Rodriguez's educational and work background.

In response to the administrative law judge's question, the vocational expert identified occupations as an inspector with 1300 available in the region, 16,000 in the state, and 800,000 in the national economy; a packager with 2500 available in the region, 30,000 in the state, and 2 million in the national economy; and an assembler with 1200 in the region, 15,000 in the state, and 1 million in the national economy.[19] Tr. 41. Based on that testimony, the administrative law judge found that

---

19.     When identifying occupations which Rodriguez could perform, the vocational expert did not reference the Dictionary of Occupational Titles' numbers for the positions. "The Social Security Administration has taken administrative notice of the reliability of the job information contained in the Dictionary of Occupational Titles . . . and often relies upon it . . . ." Burns v.

(continued...)

Rodriguez was not disabled because he could perform those three jobs, and that there were a significant number of such jobs in the regional and state economies.[20] Tr. 16.

The administrative record in this case which primarily consists of medical records is 486 pages in length and we have thoroughly reviewed that record. Rodriguez argues that the administrative law judge erred by (1) failing to consider and give appropriate weight to the GAF scores assessed by Dr. Venturanza at Northern Tier Counseling, and (2) failing to consider or even acknowledge in his decision the evaluation performed by Dr. Ruch. We find substantial merit in Rodriguez's arguments.

In finding that Rodriguez was not disabled, the administrative law judge rejected the opinion of Dr. Weis, the primary care physician, because Dr. Weis was not a specialist in psychiatry and his opinion was inconsistent with the opinions of Dr. Gold and Dr. Kelsey. The administrative law judge focused and relied on the opinions of Dr. Gold, a non-examining, non-treating psychologist and Dr. Kelsey who admitted that he conducted a limited cognitive evaluation. The administrative law judge also relied on the GAF score of 60 assessed by a physician who examined Rodriguez on one occasion in July 2008. After that evaluation Rodriguez received treatment at Norther Tier Counseling through the date of the administrative hearing. Neither Dr. Gold nor Dr. Kelsey had the benefit of the records from Northern Tier Counseling and the multiple GAF scores ranging from 44 to 46 assessed by Dr.

---

19.   (...continued)
Barnhart, 312 F.3d 113, 126 (3d Cir. 2002). The Dictionary of Occupational Titles sets forth job information, including the exertional and skill level necessary to perform each occupation.

20.   The decision did not reference the national figures.

Venturanza.  The administrative law judge did not address the GAF scores assessed by Dr.

Venturanza, a board certified psychiatrist.[21]

Several District Courts in this Circuit have held that the failure of an administrative law judge

to consider GAF scores is reversible error.  See, e.g., Pounds v. Astrue, 772 F.Supp.2d 713, 725-726

(W.D.Pa. 2011) (Standish, J.); Colon v. Barnhart, 424 F.Supp.2d 805, 812 (E.D. Pa. 2006) (Baylson,

J.).

The case of Pound v. Astrue is very similar to the present case.  In that case, the administrative

law judge focused on one GAF score of 55 and failed to address 11 other GAF scores ranging from

30 to 50.  772 F.Supp.2d at 722-723.  In finding that this was reversible error the court stated as

follows:

> Defendant argues that the Court need not necessarily
> remand if the ALJ fails to mention every GAF score.
> (Def.'s Brief at 16-17.) While we agree that low GAF
> scores, standing alone, do not satisfy the claimant's
> burden to show he is disabled, "they are probative
> evidence that must be addresses by the ALJ." Bonani
> v. Astrue, CA No. 10-0329, 2010 WL 5481551, *7, 2010
> U.S. Dist. LEXIS 137871, *20 (W.D. Pa. Oct. 15, 2010).
> We find no directive from the Third Circuit Court of
> Appeals that contradicts or overrules the holding of
> Colon v. Barnhart that the Social Security
> Administration's rules note that
>
>> the GAF remains the scale used by mental health
>> professional "to assess current treatment needs
>> and provide a prognosis." . . As such, it
>> constitutes medical evidence accepted and relied
>> upon by a medical source and must be addressed by
>> an ALJ in making a determination regarding a

---

21.     An internet search revealed that Dr. Venturanza is board certified in psychiatry.
HealthGrades, Dr. Lucille Venturanza, M.D., http://www.healthgrades.com/physician/dr-lucille-
venturanza-2r2xw (Last accessed December 1, 2011). The administrative law judge discounted
Dr. Weis's opinion because he did not have a specialty in psychiatry but apparently ignored Dr.
Venturanza's opinion as evidenced by the multiply GAF scores assessed by her in the range of 44
to 46.

claimant's disability.

> Colon v. Barnhart, 424 F.Supp.2d 805, 812 (E.D.Pa.
> 2006).

Id. at 725 (footnote omitted); see also Ruth v. Astrue, 2011 WL 2135672, *2-3 & 16 n. 21 (E.D. Pa. May 31, 2011) (Yohn, J.) (failure to consider four GAF scores ranging from 30 to 45).

The administrative law judge in the present case failed to address 16 GAF scores: the fifteen assigned by Dr. Venturanza and the one GAF score assigned by Dr. Ruch.  This error requires that the case be remanded for further proceedings.

Rodriguez also argues that the administrative law judge did not appropriately consider the opinion of Dr. Ruch.  The administrative law judge in his decision does not mention Dr. Ruch's evaluation of Rodriguez.  Dr. Ruch as stated earlier found that Rodriguez suffered from dysthymic disorder, posttraumatic stress disorder, intermittent explosive disorder and a learning disability. Tr. 294. Dr. Ruch further gave Rodriguez a GAF score of 40 and noted that his prognosis was poor. When an administrative law judge fails to acknowledge and comment on unfavorable evidence, the reviewing district court cannot ascertain if the administrative law judge considered it appropriately or inadvertently overlooked it.

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence.  We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings.

An appropriate order will be entered.

**Dated**: December 2, 2011

**United States District Judge**

16

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM RODRIGUEZ, | : | |
| Plaintiff | : | No. 4:10-CV-02089 |
| | : | |
| v. | : | (Judge Nealon) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant | : | |

### ORDER

**AND NOW**, this 2nd day of December, 2011, in accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1.  The Clerk of Court shall enter judgment in favor of William Rodriguez and against Michael J. Astrue, Commissioner of Social Security, as set forth in the following paragraph.

2.  The decision of the Commissioner of Social Security denying William Rodriguez disability insurance benefits and supplemental security income benefits is vacated and the case remanded to the Commissioner of Social Security to conduct a new administrative hearing and appropriately evaluate the medical in accordance with the background of this order.

3.  The Clerk of Court shall **CLOSE** this case.

_____
**United States District Judge**